Slip Op. 16-45

UNITED STATES COURT OF INTERNATIONAL TRADE

JIAXING BROTHER FASTENER CO., LTD., :
A/K/A JIAXING BROTHER STANDARD PART
CO., LTD., IFI & MORGAN LTD., and :
RMB FASTENERS LTD.,
                         :
            *Plaintiffs*,
                         :
        v.                      :      Court No. 15-00313
                         :
UNITED STATES,
                         :
            *Defendant*,
                         :
       and
                         :
VULCAN THREADED PRODUCTS, INC.,
                         :
            *Defendant-Intervenor*.

[Granting Plaintiffs' Motion to Stay Proceedings]

Dated:  May 6, 2016

    Gregory S. Menegaz, Alexandra H. Salzman, and J. Kevin Horgan, deKieffer & Horgan, PLLC, of Washington, D.C., for Plaintiffs.

    Elizabeth Anne Speck, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant.  With her on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch.  Of counsel on the brief was Khalil Gharbieh, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

## OPINION

RIDGWAY, Judge:

    In this action, Plaintiffs Jiaxing Brother Fastener Co., Ltd., *et al*. (collectively "Brother")

challenge various aspects of the Final Results of the U.S. Department of Commerce ("Commerce")

in the fifth administrative review of the antidumping duty order covering certain steel threaded rod

from the People's Republic of China.  *See* Complaint[1]; Certain Steel Threaded Rod From the

People's Republic of China: Final Results of Antidumping Duty Administrative Review: 2013-2014,

80 Fed. Reg. 69,938 (Nov. 12, 2015) ("Final Results").

Now before the court is Plaintiffs' Motion to Stay Proceedings, which seeks to hold this

matter in abeyance pending a determination in another action involving all of the same parties.  *See*

Plaintiffs' Motion to Stay Proceedings at 1, 3 ("Pls.' Brief")[2]; *see also* Joint Status Report and

Scheduling Order at 2, 3.   In that other action, which challenges the preceding (fourth)

administrative review of the same antidumping duty order at issue in this action, Brother contests

essentially the same aspects of Commerce's determination that Brother raises here.  *Compare*

Complaint (filed in this action), *and* First Amended Complaint, *filed in* Jiaxing Brother Fastener Co.,

Ltd., *et al*. v. United States, *et al.*, Court No. 14-00316; Pls.' Brief at 1, 2, 3-4, 5; Joint Status Report

and Scheduling Order at 3; *see also* American Life Ins. Co. v. Stewart, 300 U.S. 203, 215 (1937)

(case for stay *pendente lite* is clearest "where the parties and the issues are the same" in the two

cases).[3]

_____

[1]Except as otherwise indicated, all documents cited herein were filed on the docket of the instant action (*i.e.*, Court No. 15-00313).

[2]The three plaintiffs in this action (and in the other case, *i.e.*, Court No. 14-00316) are Jiaxing Brother Fastener Co., Ltd., a/k/a Jiaxing Brother Standard Part Co., Ltd., IFI & Morgan Ltd., and RMB Fasteners Ltd.  Jiaxing Brother Fastener Company is a Chinese manufacturer of the subject merchandise.  The other two plaintiffs are related exporter trading companies.

In both actions, the United States is the defendant, and Vulcan Threaded Products, Inc. – a domestic producer of the subject merchandise – is a defendant-intervenor.

[3]The language of the first four counts of the complaints in the two cases is exactly the same, *verbatim.  Compare* Complaint, Counts I-IV (filed in this action), *and* First Amended Complaint, Counts I-IV, *filed in* Jiaxing Brother Fastener Co., Ltd., *et al.*, Court No. 14-00316; *see also* Pls.'

Brother argues that – in light of the overlapping issues and parties in the two actions – a stay

of this action pending a ruling by this court on Brother's Motion for Judgment on the Agency

Record in Brother's action challenging the preceding administrative review (Court No. 14-00316)

will conserve judicial resources and help minimize the parties' litigation costs. *See* Pls.' Brief at 3,

4, 5; Joint Status Report and Scheduling Order at 3.[4]  Brother further contends that such a stay will

---

Brief at 3-4. Count V of the First Amended Complaint in the other action (*i.e.*, Court No. 14-00316) challenges Commerce's "surrogate valuation of brokerage and handling," an issue that Brother does not raise in this case. *See* First Amended Complaint, Count V, *filed in* Jiaxing Brother Fastener Co., Ltd., *et al.*, Court No. 14-00316; *see also* Joint Status Report and Scheduling Order at 3. Count V of the Complaint in this action asserts that Commerce improperly "fail[ed] to adjust financial ratios to account for SG&A [*i.e.*, selling, general, and administrative] labor expenses included in its direct labor calculation." *See* Complaint, Count V (filed in this action).

[4]Brother is inconsistent in its statements concerning the duration of the requested stay. On the first page of its Motion to Stay, Brother asserts that it seeks "to stay proceedings in this action pending a *final resolution* of all proceedings, *including any and all appeals*, in Jiaxing Brother Fastener Co., Ltd., *et al*. v. United States, Court No. 14-00316." *See* Pls.' Brief at 1 (emphases added).

Elsewhere in its Motion to Stay, however, Brother states that it seeks a stay only "until there is *some guidance* provided" by the court in Court No. 14-00316, with no reference to appeals or finality. *See* Pls.' Brief at 3 (emphasis added); *see also id*. at 4 (seeking to "defer[ ] further proceedings . . . until there is guidance from Court No. 14-00316"); *id*. (asserting that Defendant-Intervenor Vulcan Threaded Products, Inc. "would conserve resources by not being required to file [a brief on the merits in this action] . . . until and unless there is guidance" from Court No. 14-00316); *id*. (arguing that the Government "would also benefit from definitive guidance arising out of" Court No. 14-00316). And, in the Joint Status Report, Brother asserts that "it would needlessly waste judicial and party resources to argue . . . issues twice before [the parties] can benefit from the [*Court of International Trade's*] *guidance*" in Court No. 14-00316. *See* Joint Status Report and Proposed Scheduling Order at 3 (emphasis added).

Any confusion about the relief that Brother seeks is resolved by the terms of the proposed Order of Stay filed with Brother's Motion to Stay, which are highly specific and envision a fairly limited stay. The proposed Order of Stay contemplates, *inter alia*, that – within 30 days after issuance of an opinion on Brother's Motion for Judgment on the Agency Record pending in Court No. 14-00316 – the parties would file a status report in this action indicating "what, if any, issues/claims [in this action] may be appropriate for voluntary remand by the Department of

not prejudice the parties in any way.  *See* Pls.' Brief at 4.

The Government opposes Brother's request, arguing that a stay will not achieve any economies, and that, in fact, a stay will harm other parties.  *See generally* Defendant's Opposition to Plaintiffs' Motion to Stay Proceedings ("Def.'s Opp. Brief").  Defendant-Intervenor Vulcan Threaded Products, Inc. elected not to brief the issue.[5]

As explained in greater detail below, a stay *pendente lite* of limited duration can be expected to sharpen the issues here and to streamline these proceedings (and thus will help conserve the resources of all concerned) – and, indeed, conceivably may result in the dismissal of one or more of Brother's claims in this action.[6]  Even more to the point, the record is devoid of evidence that

---

Commerce or for withdrawal by [Brother]" in light of the opinion in Court No. 14-00316, and indicating the parties' views as to "whether it is appropriate to *continue the stay*" in this matter.  *See* Brother's Proposed Order of Stay at 1-2 (emphasis added).

[5]A separate action has been filed by a different plaintiff which, like the instant action, challenges Commerce's Final Results in the fifth administrative review of the antidumping duty order covering certain steel threaded rod from the People's Republic of China.  However, the claims asserted in that action differ from the claims that Brother asserts in this action.  *See* Complaint, *filed in* Hubbell Power Systems, Inc. v. United States, *et al.*, Court No. 15-00312; *see also* Joint Status Report and Scheduling Order at 2 (distinguishing claims at issue in this action from claims at issue in Court No. 15-00312).  Hubbell Power, the plaintiff in that action, takes no position on the Motion to Stay at issue here.  *See* Joint Status Report and Scheduling Order at 2, 4; *see also* Joint Status Report and Scheduling Order at 2, *filed in* Hubbell Power Systems, Inc., Court No. 15-00312.

It is reported that Vulcan, the defendant-intervenor in this action, opposes Brother's Motion to Stay.  *See* Pls.' Brief at 5; Joint Status Report and Scheduling Order at 4; *see also* Joint Status Report and Scheduling Order at 2, *filed in* Hubbell Power Systems, Inc., Court No. 15-00312.  However, because Vulcan did not brief the issue, the record is silent as to any factual or legal bases for the company's position.

[6]Again, at this point Brother seeks a stay of this litigation only through issuance of an opinion on its Motion for Judgment on the Agency Record pending in Court No. 14-00316.  *See* n.4, *supra*.  And, as Brother notes, that motion has been fully briefed and argued.  *See* Pls.' Brief at 5; Joint Status Report and Scheduling Order at 3.

such a stay will work any real hardship on the Government (or, for that matter, Defendant-Intervenor

Vulcan).  Brother's motion is therefore granted, and further proceedings in this action are stayed

until 30 days following a determination in <u>Jiaxing Brother Fastener Co., Ltd., *et al.*</u>, Court No. 14-

00316.

## I.  <u>Analysis</u>

The Government contends that, to justify the entry of a stay, a movant must "make a strong

showing that a stay is necessary" – a showing that the Government maintains Brother has not made.

*See* Defendant's Opp. Brief at 3 (quoting <u>Georgetown Steel Co. v. United States</u>, 27 CIT 550, 553,

259 F. Supp. 2d 1344, 1347 (2003)); *see also* Defendant's Opp. Brief at 2, 3-5.  But, in fact, <u>Landis</u>

– the seminal case on stays *pendente lite*, relied on in <u>Georgetown Steel</u> and invoked by both Brother

and the Government here – makes it clear that "the suppliant for a stay must make out a clear case

of hardship or inequity in being required to go forward" with litigation (*i.e.*, a "strong showing" of

need for a stay) *only* where "there is . . . a fair possibility that the stay . . . will work damage to some

one else."  <u>Landis v. North American Co.</u>, 299 U.S. 248, 255 (1936) (Cardozo, J.) (quoted in

<u>Georgetown Steel</u>, 27 CIT at 553, 259 F. Supp. 2d at 1346-47); *see also* Def.'s Opp. Brief at 2, 5

(citing <u>Landis</u>); Pls.' Brief at 2, 3 (same).  This is not such a case.

### A.  <u>Whether Entry of a Stay Will Result in Injury to Any Party</u>

In the instant action, the Government has failed to adduce any evidence that there is even "a

fair possibility" that it (or any other party with a cognizable interest) will suffer harm as a result of

the requested stay.  *See* Pls.' Brief at 4, 5.  The Government's sole allegation of potential prejudice

posits that "[a] stay in this case could last months or years," and that, during that time, "[a] stagnant

case will remain dormant on the Court's docket," while "the memories of agency personnel and

other interested parties will fade" and "[n]ew personnel may replace the agency employees with

knowledge of this case."  *See* Def.'s Opp. Brief at 5.[7]  To be sure, the risks that memories may fade

and that evidence may be lost or destroyed might be compelling considerations in another case.

However, international trade cases like this one are litigated on the administrative record.  As such,

all of the evidence that can be considered in this action already has been submitted and preserved.

Any concerns about the potential for loss of evidence and dimming witness memories that might

counsel against a stay in a *de novo* case simply are not present in this situation.

---

[7]The Government recognizes that "the Court possesses discretion in determining whether to stay a particular case."  Def.'s Opp. Brief at 3; *see, e.g.*, <u>Cherokee Nation of Oklahoma v. United States</u>, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (ruling that the decision as to whether, "[w]hen and how to stay proceedings is within the sound discretion of the trial court").  Nevertheless, citing <u>Ad Hoc Shrimp Trade Action Committee</u> and noting "the annual nature of Commerce's administrative reviews," the Government underscores that, in the world of international trade law, parallel litigation of sequential administrative reviews is thoroughly "routine[]."  *See* Def.'s Opp. Brief at 4-5 & n.1; <u>Ad Hoc Shrimp Trade Action Committee v. United States</u>, 802 F.3d 1339, 1341-48 (Fed. Cir. 2015) (summarizing concurrent/overlapping litigation and administrative proceedings involving common issues, spanning three administrative reviews).

True enough.  However, that fact alone says nothing about the appropriate outcome here. Applications for stays are a relatively infrequent occurrence.  Plaintiff respondents in particular (like Brother here) are generally eager to conclude litigation expeditiously, in the hopes of lowering their assigned dumping margins.  But even plaintiff respondents have other interests to weigh.  In considering whether or not to seek a stay in circumstances such as these, each party is entitled to do its own individual calculus, balancing the advantages of proceeding with the case against the advantages of deferring it (such as potential savings in the costs of litigation).  Brother conducted just such an analysis here.  As detailed herein, the case for a stay in this instance is particularly strong.  The Government has failed to demonstrate that the requested stay will prejudice any party. *See* section I.A, *infra*.  And not only are the parties in this action and in Court No. 14-00316 the same, and the claims in the two actions virtually identical, but, significantly, there is also a threshold, overarching issue with potentially far-reaching implications – *i.e.*, Commerce's selection of Thailand as the surrogate country.  *See* section I.B.1, *infra*.

To the extent that the Government seeks to protect (for lack of a better term) the inchoate "institutional memory" of "agency personnel," the Government has cited no authority for the proposition that such a nuanced and attenuated interest constitutes the type of harm that must be weighed in evaluating the appropriateness of a stay in circumstances like these. Moreover, quite apart from its lack of support in the law, the Government's argument is further undermined – as a practical and factual matter – by the not-infrequent turnover in agency staff during the pendency of international trade litigation in general. Certainly the Government does not represent that, absent a stay, there will be no changes in relevant agency personnel for the lifetime of this action.[8]

---

[8]In addition to its argument that it will be prejudiced by a stay because "the memories of agency personnel and other interested parties will fade" and "[n]ew personnel may replace the agency employees with knowledge of this case" (Def.'s Opp. Brief at 5), which is disposed of above, the Government also asserts broadly that "Commerce, defendant-intervenors, and the public have an interest in a speedy disposition of litigation" (*id*. at 6).

As noted above, however, the defendant-intervenor – Vulcan – made a considered determination not to file a brief opposing Brother's request for a stay. *See* n.5, *supra*. The Government thus is in no position to argue the interests of the defendant-intervenor in this case.

Further, as to the existence and extent of any inherent harm that the Government claims is associated with a stay *pendente lite*, it is worth noting that, with some regularity, the Government consents to – and sometimes even itself seeks – such stays. *See, e.g.*, Order of December 29, 2006, *entered in* Gerber Food (Yunnan) Co., Ltd., *et al.* v. United States, *et al.*, Court No. 04-00454 (in situation strikingly parallel to situation presented here, granting Government's motion for stay of action challenging agency's determination in fourth administrative review, pending "the issuance of *a final judgment*" in action challenging agency's determination in prior (third) administrative review) (emphasis added); Order of March 4, 2003, *entered in* Wilton Indus. v. United States, Court No. 00-00528 (granting Government's motion for stay of action pending decision by Court of Appeals for Federal Circuit in unrelated case); Georgetown Steel, 27 CIT 550, 259 F. Supp. 2d 1344 (denying Government's motion for stay of action challenging antidumping determination pending decision by Court of Appeals for Federal Circuit in related case); *see also, e.g.*, Union Steel Mfg. Co. v. United States, 37 CIT ____, ____, 896 F. Supp. 2d 1330, 1334 (2013) (citing three cases where no party, including the Government, objected to stay *pendent lite*).

Lastly, and perhaps most fundamentally, the general interest in the "speedy disposition of

Contrary to the Government's claims, the proposed stay will not "prejudice the Government's ability

to defend this case." *See* Def.'s Opp. Brief at 3.[9]

---

litigation" is present in all cases, and thus cannot itself alone *per se* preclude the entry of a stay in any case, and certainly not in this one. As the Government acknowledges, the bottom line is that, in evaluating any application for a stay, factors that may weigh against a proposed stay (such as the general interest in the "speedy disposition of litigation") must be balanced against other factors, such as the interest in efficiency, the interest in judicial economy, and the interest in conserving parties' resources, as well as other considerations such as the interest in consistency in judicial decisionmaking, and "public welfare" and "convenience." *See* <u>Landis</u>, 299 U.S. at 254, 256; Def.'s Opp. Brief at 2; *see also* n.11, *infra* (noting that "balancing test" may not apply in certain cases).

[9]None of the cases cited by the parties here expressly holds that the party status of the movant (*i.e.*, plaintiff or defendant) may be a relevant factor in evaluating a request for a stay *pendente lite*. However, underpinning much of the case law – implicitly, if not explicitly – is a concern for the rights of assertedly aggrieved plaintiffs to seek redress in the courts. *See generally* <u>An Giang Agriculture and Food Import Export Co. v. United States</u>, 28 CIT 1671, 1673 n.3, 350 F. Supp. 2d 1162, 1164 n.3 (2004) (collecting cases and analyzing, *inter alia*, <u>Landis</u>, <u>Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.</u>, 713 F.2d 1477 (10th Cir. 1983), and <u>Cherokee Nation</u>, 124 F.3d 1413).

Research has disclosed no cases where the court's analysis evinces comparable concern for the rights of defendants. This is not to suggest that defendants have no cognizable interest in the speedy disposition of litigation (whether that litigation is likely to result in their vindication, or not) – although it is worth noting that it is typically *defendants* who seek to use delay to their tactical advantage. Nonetheless, the common law historically has recognized the unique status of the plaintiff in litigation. Thus, as the Supreme Court has observed, a plaintiff is the "master of [its] complaint." *See*, *e.g.*, <u>City of Chicago v. Int'l College of Surgeons</u>, 522 U.S. 156, 164 (1997); *see also*, *e.g.*, <u>The Fair v. Kohler Die & Specialty Co.</u>, 228 U.S. 22, 25 (1913) (Holmes, J.) (explaining that "the party who brings a suit is master to decide what law he will rely upon"); <u>McDonald v. Piedmont Aviation, Inc.</u>, 625 F. Supp. 762, 767 (S.D.N.Y. 1986) (in denying defendant's motion to stay action pending outcome of another case, court "upholds *plaintiff's right to chart the course of his own litigation* and to prosecute his claims in the manner of his choice") (emphasis added).

It is therefore somewhat anomalous that, in this case, it is the defendant – the Government – that has asserted that it is inherently harmed by any delay "in a speedy disposition of litigation." *See* Def.'s Opp. Brief at 6. In any event, it does not suffice for any party – plaintiff, defendant, or otherwise – to assert such an inherent right and rest its case on that bald, abstract proposition, without articulating in concrete terms the practical, real-life effects of the potential deprivation of that right under the circumstances of the particular case at bar.

In sum, the Government has failed to identify any concrete cognizable harm associated with the requested stay.

B.  Whether Entry of a Stay Will Promote Judicial Economy
and Conserve Party Resources

The remainder of the Government's arguments focus solely on disputing the advantages that Brother claims will flow from granting the requested stay and on contesting Brother's assertions that requiring it to proceed with this case at this time would constitute a hardship.  *See generally* Def.'s Opp. Brief at 2, 3-5.  However, absent a showing by the Government that the proposed stay "would severely affect the rights of others," Brother is not required to "make a strong showing of necessity" for the stay.  *See* Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir. 1983) (cited in Def.'s Opp. Brief at 3).[10]  Similarly, absent a showing by the Government that there is at least "a fair possibility that the stay . . . will work damage to some one else," Brother need not establish that going forward with this action would constitute a "clear case of hardship or inequity" for Brother.  *See* Landis, 299 U.S. at 255 (cited in Def.'s Opp. Brief at 5).

In any event, Brother has made out a clear case that, at least to some extent, a stay will conserve the resources of all concerned (including the court), and that it is at least possible that the

---

[10]CFTC highlights a number of potentially significant factors that are glossed over or ignored in much of the case law on stays *pendente lite*.  For example, CFTC notes the significance of the action that the movant seeks to stay, distinguishing between those cases where the relief sought is the stay of another proceeding versus those cases where – as here – "the relief sought is only a stay of the case in which the motion is made."  CFTC, 713 F.2d at 1484.  Similarly, CFTC emphasizes the relevance of the identity of the courts potentially affected by the requested stay.  Specifically, CFTC recognizes that special considerations (such as comity) are implicated where the action sought to be stayed is pending in a different court – and, in particular, that the power of a federal court to stay actions in the state courts is specifically constrained by federal statute.  *Id*. at 1484 & n.5.

*stay will result in very significant savings.*[11]

### 1.   Brother's Arguments That This Action and Court No. 14-00316 Are "Essentially Identical"

Brother emphasizes that the first two counts of its complaints in both cases raise a threshold, overarching issue – Commerce's selection of Thailand as the surrogate country for use in the agency's non-market economy analysis. *See* Pls.' Brief at 2, 3; Joint Status Report and Proposed Scheduling Order at 3; Complaint, Counts I-II (filed in this action); First Amended Complaint, Counts I-II, *filed in* Jiaxing Brother Fastener Co., Ltd., *et al.*, Court No. 14-00316. There are at least two critical dimensions to Brother's observation.

First, *whether the decision favors Brother or not*, a decision on Brother's challenge to Commerce's selection of Thailand as the surrogate country in Court No. 14-00316 will almost certainly have implications – indeed, likely major implications – for the parallel claims in this action. As noted above, the language of the first two counts of Brother's First Amended Complaint in its first action is identical to that of the first two counts of its Complaint in this action. *See* n.3,

_____

[11]Quoting Georgetown Steel and citing Cherokee Nation, the Government asserts that, in evaluating an application for a stay, "a court must weigh [the] competing interests and maintain an even balance," taking into account the interests of all parties, the public, and even the court itself. *See* Def.'s Opp. Brief at 2 (quoting Georgetown Steel, 27 CIT at 553, 259 F. Supp. 2d at 1346; Cherokee Nation, 124 F.3d at 1416).

It is less than clear, however, that Brother's request for a stay of relatively limited duration is governed by the "balancing test" to which the Government points. *See generally* Cherokee Nation, 124 F.3d at 1416 (discussing Landis, and suggesting that "balancing test" governs cases where stay sought is "of indefinite duration"). Even assuming that the "balancing test" is applicable here, it does not tip in favor of the Government. As detailed above, the Government has not demonstrated that it will suffer any real harm as a result of the requested stay. There is thus essentially nothing to "balance" against the considerations weighing in favor of the stay that Brother seeks.

*supra*. Further, Brother litigated those issues in the same fashion at the administrative level in both

the fourth and fifth administrative reviews, pressing essentially the same arguments. *Compare*, *e.g.*,

Case Brief of Jiaxing Brother Standard Part Co., Ltd. and Affiliates at 1-2, 3-29 (public version)

(Aug. 4, 2014) (submitted to Commerce in fourth administrative review) *and* Case Brief of Jiaxing

Brother Standard Part Co., Ltd. and Affiliates at 2, 28-51 (public version) (June 22, 2015) (submitted

to Commerce in fifth administrative review); *see also* Plaintiffs' Rule 56.2 Memorandum In Support

of Judgment Upon the Agency Record at 1, 2-3, 7-31, *filed in* Court No. 14-00316; Plaintiffs' Reply

Brief at 1, 2-8, *filed in* Court No. 14-00316.

Second, *if the decision on Brother's challenge to Commerce's selection of Thailand as the

surrogate country in Court No. 14-00316 favors Brother*, that decision might well have implications

– potentially even decisive implications – for Brother's remaining claims in both Court No. 14-

00316 and in this action. This is because all of the remaining counts of the First Amended

Complaint in Court No. 14-00316 and all of the remaining counts of the Complaint in this action are

challenges to surrogate values and financial ratios that Commerce based on Thai data. *See* Pls.'

Brief at 3-4; Joint Status Report and Proposed Scheduling Order at 3.[12] As a practical matter,

_____

[12]*See also* Complaint, Counts III-V (filed in this action) (assuming that Commerce's selection of Thailand as surrogate country is sustained, and, respectively, challenging specific Thai import data used by the agency to value steel wire rod, alleging that surrogate financial ratios were not "based on the 'best available information'" and were "unsupported by substantial evidence," and contesting agency's alleged "failure to adjust [the surrogate] financial ratios [calculated from Thai financial statements] to account for SG&A labor expenses included in its direct labor calculation"); First Amended Complaint, Counts III-V, *filed in* Jiaxing Brother Fastener Co., Ltd., *et al.*, Court No. 14-00316 (assuming that Commerce's selection of Thailand as surrogate country is sustained, and, respectively, contesting the specific Thai import data used by the agency to value steel wire rod, challenging agency's alleged failure to adjust the surrogate financial ratios calculated from Thai financial statements to account for SG&A labor expenses included in its direct labor calculation, and disputing the specific Thai data used by the agency to value brokerage and handling costs).

particularly in light of Commerce's preference for the use of a single surrogate country, all of Brother's remaining claims are (in effect) contingent on the correctness of Commerce's selection of Thailand as the surrogate country (which is the subject of Brother's first two claims). *See*, *e.g.*, Jiaxing Brother Fastener Co. v. United States, ____ F.3d ____, ____, ____, ____, 2016 WL 1599802 * 2, 4, 9 (Fed. Cir. 2016) (on appeal in action challenging Commerce's determination in second administrative review of same antidumping duty order at issue here, citing 19 C.F.R. § 351.408(c)(2) and acknowledging agency preference for use of single surrogate country).

Thus, if – as a result of a decision in favor of Brother on either or both of the first two counts – Commerce were to select a new surrogate country in Court No. 14-00316, it presumably would be necessary to reevaluate the surrogate values and financial ratios in that case, because they are based on Thai data. And, to the extent that Commerce's selection of a new surrogate country in Court No. 14-00316 were to lead to the selection of a new surrogate country in this action, it presumably would be necessary to reevaluate the surrogate values and financial ratios in this case as well.[13]

_____

[13]Of course, as the proverb counsels, "what's good for the goose is good for the gander." Just as a decision *in Brother's favor* on its challenge to Commerce's selection of Thailand as the surrogate country in Court No. 14-00316 will almost certainly have significant implications for the parallel claims in this action, it is also true that a decision *in favor of the Government* on that issue may leave Brother with very little room to maneuver here (and might even cause Brother to consider whether those claims should be abandoned in this action).

In addition, Brother (and the other parties), like the court, also must give appropriate consideration to the implications – if any – for this action (and for Court No. 14-00316) of the judicial determinations in Jiaxing Brother Fastener Co., Ltd., *et al.* v. United States, *et al.*, Court No. 12-00384. In that action, which involved the second administrative review of the same antidumping duty order at issue in this action, Brother similarly challenged Commerce's selection of Thailand as the surrogate country. The Court of Appeals recently issued an opinion affirming the Court of International Trade's decision, which sustained the selection of Thailand. *See generally* Jiaxing

Brother similarly emphasizes that the third counts of its complaints in both cases challenge Commerce's use of certain Thai import data as the surrogate value for Brother's steel wire rod input, which Brother characterizes as "the all-important steel value[]." *See* Pls.' Brief at 3; Joint Status Report and Scheduling Order at 3; Complaint, Count III (filed in this action); First Amended Complaint, Count III, *filed in* Jiaxing Brother Fastener Co., Ltd., *et al.*, Court No. 14-00316.[14] The gravamen of Count III is that – even if the agency's selection of Thailand as the surrogate country is sustained – the specific Thai data that Commerce used as the surrogate value for steel wire rod must be adjusted. *See* Plaintiffs' Rule 56.2 Memorandum In Support of Judgment Upon the Agency Record at 1, 31-33, *filed in* Court No. 14-00316.[15]

Brother states that "[r]eversal and redetermination on this issue" (*i.e.*, the asserted need for adjustments to the specific Thai data used to value steel wire rod) in Court No. 14-00316 "would have a major impact on the antidumping duty margin and would affect which, if any, other

---

Brother Fastener Co., _____ F.3d _____, 2016 WL 1599802 (Fed. Cir. 2016), *aff'ing* Jiaxing Brother Fastener Co. v. United States, 38 CIT _____, 11 F. Supp. 3d 1326 (2014) *and* Jiaxing Brother Fastener Co. v. United States, 38 CIT _____, 961 F. Supp. 2d 1323 (2014).

[14]*See also* Jiaxing Brother Fastener Co., _____ F.3d at _____, _____, _____, 2016 WL 1599802 * 4, 5, 9 (on appeal in action challenging Commerce's determination in second administrative review, acknowledging that, in production of steel threaded rod, the input with greatest impact on dumping margin is steel wire rod).

[15]*But see*, *e.g.*, Audio Recording of Oral Argument (March 15, 2016) in Court No. 14-00316 at 2:05:00-2:07:58 (counsel for Brother waives part of its argument that adjustments to the specific Thai data used as the surrogate value for steel wire rod are necessary, at least as to Court No. 14-00316). In light of its position as revised at oral argument in Court No. 14-00316, it is unclear whether Brother continues to assert that a decision in Court No. 14-00316 on Brother's challenge to the specific Thai data used as the surrogate value for steel wire rod "would have a major impact on the antidumping duty margin and would affect which, if any, other individual surrogate value issues [Brother would] continue to appeal" (quoting Pls.' Brief at 3) in that case and in this one. Brother has not supplemented its Motion to Stay to clarify this point.

individual surrogate value issues [Brother would] continue to appeal." Pls.' Brief at 3.[16]  As noted

above, the language of the third count of Brother's First Amended Complaint in Court No. 14-00316

is identical to the language of the third count of its Complaint in this action.  *See* n.3, *supra*.  Further,

Brother litigated the issue in the same fashion at the administrative level in both the fourth and fifth

administrative reviews, making virtually the same arguments.  *Compare*, *e.g.*, Case Brief of Jiaxing

Brother Standard Part Co., Ltd. and Affiliates at 2, 29-34 (public version) (Aug. 4, 2014) (submitted

to Commerce in fourth administrative review) *and* Case Brief of Jiaxing Brother Standard Part Co.,

Ltd. and Affiliates at 2, 51-55 (public version) (June 22, 2015) (submitted to Commerce in fifth

administrative review); *see also* Plaintiffs' Rule 56.2 Memorandum In Support of Judgment Upon

the Agency Record at 1, 31-33, *filed in* Court No. 14-00316;  Plaintiffs' Reply Brief at 1, 8-14, *filed*

*in* Court No. 14-00316.

        In other words, Brother seems to contemplate that – even if it does not prevail on its

challenge to Commerce's selection of Thailand as the surrogate country (*i.e.*, Counts I and II) in

Court No. 14-00316 – a victory for Brother on its challenge to the specific Thai import data that

were used to value steel wire rod for purposes of the Final Results (*i.e.*, a victory on Count III)

would cause Brother to reconsider "which, if any, other individual surrogate value issues . . . [it

would] continue to appeal" in both Court No. 14-00316 and in this action.  In short, Brother

---

[16]Brother notes, for example, that its challenge to Commerce's surrogate valuation of
brokerage and handling charges (the subject of Count V of Brother's First Amended Complaint in
Court No. 14-00316) is "of minor comparative importance" relative to its challenge to Commerce's
surrogate valuation of steel wire rod, the subject of Count III in both Court No. 14-00316 and in this
case (as well as its challenge to Commerce's surrogate financial ratios, the subject of Count IV in
Court No. 14-00316 and Counts IV and V in this case).  *See* Joint Status Report and Scheduling
Order at 3.

represents that a "win" on its challenge to the specific Thai import data used to value steel wire rod in Court No. 14-00316 might well result in its voluntary dismissal of some or all of its remaining claims in that case, and in this case as well.[17]

### 2.   The Government's Arguments Highlighting Differences Between This Action and Court No. 14-00316

The Government does not dispute the compelling parallels between the facts and the claims in this action and the facts and the claims in Court No. 14-00316.  The Government acknowledges that "Commerce ultimately selected Thailand as the surrogate country to value [Brother's] factors of production in [both] the fourth and fifth administrative reviews, and made similar choices with respect to determining surrogate values for steel wire rod, financial expenses, and labor."  Def.'s Opp. Brief at 2.

The Government nevertheless argues that "Commerce's determinations in the fifth administrative review [which are at issue in this action] are independent of those in the fourth administrative review [which are at issue in Court No. 14-00316], and Commerce relied on . . . different administrative record[s]" in the two cases.  Def.'s Opp. Brief at 2; *see also id.* at 3-4 (same); Joint Status Report and Scheduling Order at 4 (same).  The Government therefore concludes

---

[17]Significantly, Brother stops short of arguing that the ruling on its Motion for Judgment on the Agency Record in Court No. 14-00316 will likely inform both the parties' briefing and judicial consideration of its claims in Counts III through V of its Complaint in this action, to the extent that Brother does not voluntarily dismiss those claims.  However, given the strong similarities between this case and Court No. 14-00316, the ruling in Court No. 14-00316 will almost certainly have implications – potentially major implications – for the parallel claims in this action, whether Brother or the Government prevails.  Moreover, Court No. 14-00316 is not the only related litigation that must be borne in mind.  *See generally* Jiaxing Brother Fastener Co., _____ F.3d _____, 2016 WL 1599802, *aff'ing* Jiaxing Brother Fastener Co., 38 CIT _____, 11 F. Supp. 3d 1326 (2014) *and* Jiaxing Brother Fastener Co., 38 CIT _____, 961 F. Supp. 2d 1323 (2014).

that a stay will not result in any economies because "[t]he Court can only evaluate [Brother's] claims that Commerce's surrogate country and surrogate value determinations were not supported by substantial evidence by evaluating the record and decision memoranda [that are] specific to each review." Def.'s Opp. Brief at 4; *see also id.* at 3 (same); Joint Status Report and Scheduling Order at 4 (same).

But these general points that the Government makes – while fundamentally true – cannot suffice to carry the day, particularly in this case. The Government fails to address in any concrete way the specific potential practical implications for this action of a decision on Brother's Motion for Judgment on the Agency Record pending in Court No. 14-00316. In light of the strong parallels between the facts and the claims in the two cases, the Government cannot honestly rule out the very real possibility that the forthcoming ruling in Court No. 14-00316 could have a significant (potentially even determinative) impact on the evaluation of the claims in this action by the parties and by the court.

Moreover, it is of no moment that a decision on Brother's Motion for Judgment on the Agency Record in Court No. 14-00316 might not dispose of any or all of the claims in this action. A case may properly be stayed pending the outcome of another case (the "lead" case) even where there is no possibility that the "lead" case will be determinative of the case sought to be stayed – *i.e.*, even where the "lead" case, at most, may streamline the issues in the case sought to be stayed. *See*, *e.g.*, Landis, 299 U.S. at 254, 256 (summarily rejecting argument that "before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical," and noting that, even though "every question of fact and

law" in the case sought to be stayed might not be decided in the "lead" case, "in all likelihood [the 'lead' case] will settle many and simplify them all"); Levya v. Certified Grocers of California, Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979) (ruling that stay pending outcome of another case is appropriate even where the other proceedings are not "necessarily controlling of the action" that is stayed); CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (in evaluating application for stay, court is to weigh the potential effect on "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law").

In the case at bar, it is beyond cavil that a judicial determination in Court No. 14-00316 will help clarify, refine, and sharpen the issues in this action, and will inform the parties' briefing, even if such a determination does not directly dispose of any of the claims here.

## II.  Conclusion

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254.  For the reasons set forth above, a relatively brief stay of this action – pending a determination in Jiaxing Brother Fastener Co., et al., Court No. 14-00316 – will promote judicial economy, conserve the resources of all parties, and ultimately advance the interests of justice.

Court No. 15-00313                                                                         Page 18


     Brother's Motion to Stay is therefore granted, and further proceedings in this action are

stayed until 30 days following the issuance of an opinion on Brother's Motion for Judgment on the

Agency Record pending in Court No. 14-00316.

     A separate order will enter accordingly.



                                                  ___/s/ Delissa A. Ridgway_____
                                                           Judge

Dated:  May 6, 2016
     New York, New York