Slip Op. 20-86

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **JIAXING BROTHER FASTENER CO., LTD., A/K/A JIAXING BROTHER STANDARD PART CO., LTD., IFI & MORGAN LTD., and RMB FASTENERS LTD.,** | |
| **Plaintiffs,** | |
| **v.** | Before: Claire R. Kelly, Judge |
| **UNITED STATES,** | Court No. 15-00313 |
| **Defendant,** | |
| **and** | |
| **VULCAN THREADED PRODUCTS, INC.,** | |
| **Defendant-Intervenor.** | |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's remand redetermination in the fifth administrative review of certain steel threaded rod from the People's Republic of China.]

Dated: June 22, 2020

Gregory S. Menegaz, J. Kevin Horgan, and Alexandra H. Salzman, deKieffer & Horgan, PLLC, of Washington, D.C., for plaintiffs Jiaxing Brother Fastener Co., Ltd., a/k/a Jiaxing Brother Standard Parts Co., Ltd., IFI & Morgan Ltd., and RMB Fasteners Ltd.

Joseph H. Hunt, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the brief were Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and Elizabeth Anne Speck, Senior Trial Counsel. Of counsel was W. Mitch

Purdy, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Kelly, Judge:   Before the court is the U.S. Department of Commerce's ("Department" or "Commerce") remand redetermination filed pursuant to the court's order in Jiaxing Brother Fastener Co. v. United States, 44 CIT __, 428 F. Supp. 3d 1364 (2020) ("Jiaxing I").  See also Final Results of Redetermination Pursuant to Court Remand Order in [Jiaxing I], Apr. 24, 2020, ECF No. 62 ("Remand Results"). In Jiaxing I, the court sustained in part and remanded in part Commerce's final determination in the fifth administrative review of the antidumping duty ("ADD") order covering certain steel threaded rod ("STR") from the People's Republic of China ("PRC").  See Certain [STR] from the [PRC], 80 Fed. Reg. 69,938 (Dep't Commerce Nov. 12, 2015) (final results of [ADD] admin. review; 2013–2014) ("Final Results") and accompanying Issues and Decision Memo. for the Final Results of the Fifth Administrative Review of the [ADD] Order on Certain [STR] from the [PRC], A-570-932, (Nov. 3, 2015), ECF No. 18-4 ("Final Decision Memo.").  Relevant here, the court remanded Commerce's determination regarding the calculation of surrogate financial ratios for further explanation or consideration.  See Jiaxing I, 44 CIT at __, 428 F. Supp. 3d at 1381–82.  On remand, Commerce reopened the record and provided further explanation as to its calculation of surrogate financial ratios.  See Remand Results at 1–2, 4.  No party filed comments on Commerce's remand redetermination. Defendant requests the court sustain the Remand Results in their entirety.  See Def.'s

Mot. Sustain Results of Remand Redetermination, June 4, 2020, ECF No. 64 ("Def.'s

Mot."). For the reasons that follow, the court sustains the <u>Remand Results</u>.

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in its

previous opinion ordering remand to Commerce, and now recounts those relevant to

the court's review of the <u>Remand Results</u>. <u>See</u> <u>Jiaxing I</u>, 44 CIT at __, 428 F. Supp.

3d at 1369–70. Relevant here, in the fifth administrative review of the ADD order

covering certain STR from the PRC, Commerce selected Thailand as the primary

surrogate country to value Jiaxing Brother Fastener Co., Ltd. (a/k/a Jiaxing Brother

Standard Parts, Co., Ltd.), IFI & Morgan Ltd., and RMB Fasteners Ltd.'s

(collectively, "Jiaxing")  factors of production ("FOPs") and to calculate surrogate

financial ratios.[1]  <u>See</u> Final Decision Memo. at 45–66. Commerce, specifically, valued

the FOP "hours of labor" with data from the Statistical Office of Thailand's Labor

---

[1] In an antidumping proceeding, if Commerce considers an exporting country to be a non-market economy ("NME"), like the PRC, it will identify one or more market economy countries to serve as a "surrogate" for that NME country in the calculation of normal value. <u>See</u> 19 U.S.C. § 1677b(c)(1), (4). Normal value is determined on the basis of FOPs from the surrogate country or countries used to produce subject merchandise. <u>See</u> <u>id.</u> at § 1677b(c)(1). FOPs to be valued in the surrogate market economy include "hours of labor required," "quantities of raw materials employed," "amounts of energy and other utilities consumed," and "representative capital cost, including depreciation." <u>Id.</u> at § 1677b(c)(3). This analysis is designed to determine a producer's costs of production in an NME as if that producer operated in a hypothetical market economy. <u>See, e.g.</u>, <u>Downhole Pipe & Equipment, L.P. v. United States</u>, 776 F.3d 1369, 1375 (Fed. Cir. 2015); <u>Nation Ford Chemical Co. v. United States</u>, 166 F.3d 1373, 1375 (Fed. Cir. 1999); <u>see also</u> 19 U.S.C. § 1677b(c)(1).

Force Survey of the Whole Kingdom ("NSO data" or "NSO reports").[2]  In addition,

Commerce derived surrogate financial ratios, which are used to capture "an amount

for general expenses and profit" that is added to normal value,[3] 19 U.S.C. §

---

[2] Commerce generally relies on labor costs reported in the International Labor Organization's ("ILO") Chapter 6A data, unless another data source better accounts for direct and indirect labor costs.  See Antidumping Methodologies in Proceedings Involving [NMEs]: Valuing the [FOP]: Labor, 76 Fed. Reg. 36,092 (Dep't Commerce June 21, 2011) ("Labor Methodologies").  Here, however, Commerce valued hours of labor with the NSO data, because it found the data to be more industry-specific and contemporaneous with the POR than the ILO Chapter 6A data.  See Final Decision Memo. at 60, 65; see also Final SV Memo. at Exs. 8–9.

[3] Section 1677b(c)(1) provides for the separate valuation of the hours of labor FOP and of general expenses and profit in the normal value calculation.  See 19 U.S.C. § 1677b(c)(1) (Commerce determines "normal value . . . on the basis of the value of [FOPs]," including "hours of labor," to which Commerce "add[s] an amount for general expenses and profit[.]").  To value general expenses and profit, Commerce calculates surrogate financial ratios from financial statements of one or more producers of comparable merchandise in the primary surrogate country to capture certain items used in the production of subject merchandise.  See 19 C.F.R. § 351.408(c)(4) (2015); Dorbest Ltd. v. United States, 604 F.3d 1363, 1368 (Fed. Cir. 2010).  Specifically, Commerce calculates separate surrogate financial ratios for SG&A, manufacturing overhead, and profit from surrogate financial statements.  See, e.g., Manganese Metal From the [PRC], 64 Fed. Reg. 49,447, 49,448 (Dep't Commerce Sept. 13, 1999) (final results of second [ADD] admin. review).  To do so, Commerce analyzes each financial statement line item and either assigns the line item value to a particular category— i.e., raw materials, labor, energy, manufacturing overhead, finished goods, and profit—or excludes the value from its calculation.  See, e.g., Final SV Memo. at Ex. 13.  Commerce then calculates separate surrogate financial ratios—for manufacturing overhead, SG&A, and profit—based on the total value of each category.  See id.; see also Manganese Metal From the [PRC], 64 Fed. Reg. at 49,448. As relevant here, to calculate the SG&A surrogate financial ratio, Commerce divides the total SG&A value (numerator) by the total cost of manufacturing (denominator), i.e., the sum of raw materials, labor, energy, manufacturing overhead, and finished goods.  See, e.g., Final SV Memo. at Ex. 13; see also Manganese Metal From the [PRC], 64 Fed. Reg. at 49,448.

1677b(c)(1) (2012),[4] from the financial statements of three Thai companies.[5]   Final

Decision Memo. at 56.   Each company's financial statements itemized production

labor costs separately from non-production labor, which were categorized under

"selling and administration costs."   See Final Surrogate Value Memo. at Ex. 13, PD

275–79, bar codes 3414832-01–05 (Nov. 3, 2015) ("Final SV Memo.").[6]   In the

calculation of surrogate financial ratios, Commerce categorized selling, general, and

administrative ("SG&A") labor-related line items as SG&A expenses; it did not, as

Jiaxing urged during the administrative proceeding to avoid double-counting labor

costs, reclassify the SG&A labor-related line items—such as salary, welfare, and

social security—as labor.[7]   See Final Decision Memo. at 64–66.   As a result, in

---

[4] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

[5] Those three companies are: L.S. Industry Co., Ltd., Thai Mongkol Fasteners Co., Ltd., and Sahasilp Rivet Industrial Co., Ltd.  See Final Decision Memo. at 56.

[6] On January 11, 2016, Defendant filed on the docket the indices to the public and confidential administrative records of this review at ECF No. 18-1–2.  Subsequently, on May 8, 2020, Defendant filed indices to the public and confidential remand record at ECF No. 63-1–2.  Citations to administrative record documents in this opinion are to the numbers Commerce assigned to such documents in the indices.

[7] Generally, double counting is disfavored in antidumping calculations because it is distortive and renders margins less accurate.  See, e.g., Zhaoqing Tifo New Fibre Co. v. United States, 41 CIT __, __ n.8, 256 F. Supp. 3d 1314, 1319 n.8 (2017) (collecting cases).  Therefore, Commerce will make adjustments to the calculation of surrogate financial ratios to avoid double-counting labor costs, "when the available record information—in the form of itemized indirect labor costs—demonstrates that labor costs are overstated."  See Labor Methodologies, 76 Fed. Reg. at 36,094; see also Issues & Decision Memo. for the Final Determination in the [ADD] Investigation of

(footnote continued)

Commerce's calculation, the SG&A surrogate financial ratio numerators included these labor-related line items' values, along with other SG&A expenses; and, the denominators contained, inter alia, other labor costs.[8]   See Final SV Memo. at 9 & Ex. 13.

In Jiaxing I, the court held Commerce's determination not to adjust the surrogate financial statements to be inadequately explained and unsupported by record evidence.   See id., 44 CIT at __, 428 F. Supp. 3d at 1379.   The court explained that it was unclear on what basis Commerce found that the NSO data do not include SG&A labor, because the NSO data identify individual line items for "manufacturing" activities, and do not refer to "administrative and support activities."   Id., 44 CIT at __, 428 F. Supp. 3d at 1379 (citing Final SV Memo. at Exs. 8–9; Final Decision Memo. at 65).   Further, the court noted that even though Commerce stated that it relies on

---

Drawn Stainless Steel Sinks from the [PRC] at 15, A-570-983, (Feb. 19, 2013), available at https://enforcement.trade.gov/frn/summary/prc/2013-04379-1.pdf (last visited June 17, 2020) (stating that "because the NSO data include all labor costs, the Department has treated itemized SG&A labor costs in the surrogate financial statements as a labor expense rather than an SG&A expense, and we have excluded those costs from the surrogate financial ratios").   In such a case, Commerce will determine whether the surrogate financial statements "include disaggregated overhead and [SG&A] expense items that are already included in the [record data used to value labor], [Commerce] will remove these identifiable costs items."   See Labor Methodologies, 76 Fed. Reg. at 36,094.

[8] Specifically, Commerce treated the following line items as SG&A expenses: L.S. Industry Co., Ltd.'s line items "Salary and Bonus" and "Social Security and Compensation"; Sahasilp Rivet Industrial Co., Ltd.'s "Salaries, wages, and additional benefits," "Bonus," and "Social Security"; and, Thai Mongkol Fasteners Co., Ltd.'s "Salary and employee expenses," "Allowance and employee welfare," and "Social security fund contribution."   See Final SV Memo. at Ex. 13.

the same NSO data to calculate labor hours as in the previous administrative review,

the records of the two proceedings are not the same, because this record contains only

excerpted data, not the full NSO reports.[9]  Id., 44 CIT at __, 428 F. Supp. 3d at 1379–

80 (citing Final Decision Memo. at 65–66).  Therefore, the court held that Commerce's

determination that the NSO data does not cover SG&A labor, and as a consequence,

that no adjustment of the surrogate financial ratios is warranted, was not supported

by the record.  Id., 44 CIT at __, 428 F. Supp. 3d at 1380.[10]  The court remanded

Commerce's determination for further explanation or reconsideration, specifically

directing Commerce to explain "the basis for finding record evidence that allows it to

conclude that it could capture, and not overstate, labor costs by applying the [NSO

data] and, as a result, decline to adjust the surrogate financial ratios."  Id., 44 CIT at

__, 428 F. Supp. 3d at 1381.

---

[9] By teleconference with the parties, the court requested the parties to indicate whether, and where, the complete NSO reports were on the record.  See Telephone Conference, Dec. 16, 2019, ECF No. 56.  In reply, Defendant and Defendant-Intervenor pointed to the excerpted NSO quarterly data.  See Def.'s Resp. Ct.'s Request for Information, Dec. 17, 2019, ECF No. 57; [Def.-Intervenor Vulcan Threaded Products Inc.'s] Resp. Ct.'s Request for Information, Dec. 17, 2019, ECF No. 58.  Plaintiffs, after reviewing the record, responded that "it was mistakenly presumed that the complete [NSO data] was on the record . . . The submission of this labor data contained only an excerpt . . . with a webpage link to the full report."  Pls.' Resp. Ct.'s Request for Information, Dec. 17, 2019, ECF No. 59.

[10] The court also rejected Commerce's rationale that it is unable to "go behind" a surrogate financial statement, a practice where Commerce declines to adjust surrogate financial statements that do not disaggregate expenses.  Jiaxing I, 44 CIT at __, 428 F. Supp. 3d at 1380–81.

On remand, Commerce offers further explanation as to why it continues to decline to adjust the surrogate financial ratios.[11]   See Remand Results at 6–12. Specifically, Commerce reopened the record, placing the full versions of the NSO reports on the record, which it finds do not provide the information necessary to accurately adjust the surrogate financial ratios to account for any potential overstatement in labor costs.  See Remand Results at 4, 8–12.[12]  Commerce explains that based on Table 8 of the NSO data, which lists occupations in the "manufacturing" sector, including occupations related to SG&A activities, it cannot determine whether there was a relationship between those occupational groupings and the average wages reported in Table 15 that it uses to derive labor hours.  Id. at 8–9.[13]  Commerce

---

[11] Only petitioner submitted comments on the draft remand results, expressing its support for Commerce's remand redetermination.  See Remand Results at 4; see also Letter from Schagrin Associates to Sec of Commerce Pertaining to Vulcan Cmts on Draft Results Redetermination, RPD 10, bar code 3962200-01 (Apr. 7, 2020).

[12] Commerce placed the following NSO reports on the record: "The Labor Force Survey Whole Kingdom – Quarter 4: October – December 2013," "The Labor Force Survey Whole Kingdom – Quarter 1: January – March 2014," "The Labor Force Survey Whole Kingdom – Quarter 2: April - June 2013," and "The Labor Force Survey Whole Kingdom – Quarter 3: July – September 2013."  Remand Results at 4 (citing Memo from USDOC to File Pertaining to Interested Parties Placing Documents on the Record, RDP 1–3, bar codes 3947186-01–3 (Feb. 25, 2020); Memo from USDOC to File Pertaining to Interested Parties Placing Documents on the Record, RPD 4, bar code 3947746-01 (Feb. 26, 2020)).

[13] Specifically, Commerce points to the mismatch in numbers of persons surveyed in

(footnote continued)

finds that the record lacks evidence to support a finding as to what extent, or by what percentage, the NSO data also covered SG&A labor. <u>Id</u>. at 8–10. Moreover, given that Jiaxing did not report labor hours associated with SG&A staff, Commerce declines to assume that the NSO data would accurately compensate for, and not overstate, respondents' unreported SG&A labor hours. <u>Id</u>. at 8, 10–11 (noting that its approach is consistent with <u>Jiaxing Brother Fastener Co. v. United States</u>, 44 CIT __, 425 F. Supp. 3d 1338 (2020)). As a result, Commerce does not transfer the surrogate financial statements' SG&A labor-related line items to the denominator in the surrogate financial ratio calculation, because doing so could distort the calculation and result in an undervaluation of labor-related SG&A expenses. <u>Id</u>. at 11–12. Commerce makes no further adjustments to Jiaxing's margin of 39.53 percent. <u>Id.</u> at 13.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting the final determination in a review of an antidumping duty order. The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or

---

Table 8 compared to Table 15, and noted that the lesser number of persons surveyed in Table 15 rate indicate that some persons surveyed for occupation in Table 8 were excluded from the calculation of the average wage rate. <u>Remand Results</u> at 8–9.

otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of

a redetermination pursuant to court remand are also reviewed 'for compliance with

the court's remand order.'" <u>Xinjiamei Furniture (Zhangzhou) Co. v. United States</u>, 38

CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting <u>Nakornthai Strip Mill Public

Co. v. United States</u>, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

No party filed comments on Commerce's remand redetermination, and it is

therefore uncontested.  Defendant moved for the court to sustain the <u>Remand Results</u>

and enter judgment.  <u>See</u> Def.'s Mot. at 1–2.   Upon review of Commerce's remand

redetermination, Commerce's decision to reopen the record to place the full versions

of the NSO reports on the record and its additional explanation of its calculation of

the surrogate financial ratios complies with the court's order in <u>Jiaxing I</u> and is in

accordance with the statute and regulations governing the valuation of labor.

Therefore, the court sustains the <u>Remand Results</u>.

## CONCLUSION

There being no challenges to the <u>Remand Results</u>, and those results being

otherwise lawful and supported by substantial evidence, the court sustains

Commerce's <u>Remand Results</u>.  Judgment will enter accordingly.

<u>/s/ Claire R. Kelly</u>
Claire R. Kelly, Judge

Dated:       June 22, 2020
             New York, New York